NO. 07-00-0341-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 16, 2001

______________________________

ANTONIO P. ROMERO, ET AL., APPELLANTS
(footnote: 1)

V.

BAPTIST/ST. ANTHONY’S HOSPITAL CORPORATION, ET AL., APPELLEES

_________________________________

FROM THE 108
TH
 DISTRICT COURT OF POTTER COUNTY;

NO. 85,304-E; HONORABLE ABE LOPEZ, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Antonia P. Romero, individually and on behalf of the Estate of Arcelia Pacheco, deceased,
(footnote: 2) challenges the order of the trial court dismissing her suit against High Plains Baptist Hospital and Baptist St. Anthony’s Hospital Corporation (Hospital).  By one issue, Romero contends the trial court erred in dismissing the action in its entirety based upon section 13.01(f) of the Medical Liability Insurance Improvement Act of Texas.  Tex. Rev. Civ. Stat. Ann. art. 4590(i) (Vernon Supp. 2001).  Based upon the rationale expressed herein, we affirm.

On November 6, 1996, while recovering from back surgery at the Hospital, Pacheco fell from her bed.  On September 18, 1998, Romero, individually and on behalf of the Estate of Arcelia Pacheco, filed suit alleging that Pacheco sustained personal injuries caused by the wrongful act or omissions or negligence of the Hospital arising from the failure to take preventive measures and leaving Pacheco unassisted while recovering from  surgery.  Claims of negligence included: (a) failing to provide proper nursing care; (b) failing to implement fall prevention measures; (c) failing to follow hospital policy/guidelines; (d) failing to pay proper attention, and (e) failing to take proper precautions.  

After the Hospital filed its original answer, Romero answered discovery on November 18, 1998.  As material here, by interrogatory 2(c), the Hospital asked Romero to provide a “detailed description of the mental impressions and opinions held by the expert.”  Romero answered, “[w]ill provide a detailed description when received.”  By answer to interrogatory 3, which inquired about expert’s written reports, Romero answered “[w]ill produce written report when received.”  Finally, responding to interrogatory 11, which requested a detailed description of how Romero contended that Pacheco “came to fall on the floor at the time of the incident in question,” Romero answered in part, “[s]pecific will be detailed by expert witness.”  The Hospital filed its motion to dismiss the case pursuant to section 13.01(d) of the Act on March 21, 2000.  Notwithstanding the fact that Romero’s answers to the interrogatories indicated that a report of an expert would be provided, none was provided. 

We base our review of Romero’s contention solely upon the pleadings and the discovery responses that an expert’s report would be provided, although it never was provided.  We review the dismissal of Romero’s claims by an abuse of discretion standard.  Knie v. Piskun, 23 S.W.3d 455, 461 (Tex.App.--Amarillo 2000, pet. denied), and Martinez v. Battelle Memorial Institute, 41 S.W.3d 685, 688 (Tex.App.--Amarillo 2001, no pet.).  In applying this standard, we defer to the trial court’s factual determinations, but review questions of law 
de novo
, and must then determine if the trial court acted without reference to any guiding rules or principles.  Worford v. Stampler, 801 S.W.2d 108, 109 (Tex. 1990).

Section 1.03(4) of the Act provides:

‘[h]ealth care liability claim’ means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or 
safety 
which proximately results in injury to or death of the patient, whether the patient’s claim or cause of action sounds in tort or contract.

(Emphasis added).  Section 13.01(d) of the Act requires that an expert report be provided by a claimant to counsel for a health care provider within 180 days of the date suit was filed.  Romero concedes that she did not file an expert report within 180 days nor seek an extension of time until the 210th day as permitted by section13.01(f) and (g).

Romero contends that the claims of negligence do not implicate a health care liability claim under the Act.  Whether acts and omissions alleged as the basis of liability are health care claims and subject to the provisions of the Act depends on the underlying nature of the claim.  
See
 
Martinez
, 41 S.W.3d at 692, 
citing
 Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995).  The first claim of negligence that the Hospital failed to provide proper nursing care is not at issue because a “nurse” is clearly defined under the Act as a “health care provider” and the quality of nursing care is considered a health care claim.  Art. 4590i, § 1.03(3).  The remaining claims are also covered under the Act because the standards of care for such matters are not within the realm of knowledge of an ordinary juror.  
Martinez
, 41 S.W.3d at 692.  Appropriate standards for measuring conduct as to such matters requires testimony of persons knowledgeable in the health care field.  
Id.
  Romero’s remaining four claims of negligence set forth above relate to patient safety, which is expressly included within the term “[h]ealth care liability claim.”  Art. 4590i, §1.03(a)(4).
(footnote: 3)  

Moreover, Romero’s claims are based upon alleged acts of negligence while the patient was in a hospital bed.  
Cf
. Roger v. Crossroads Nursing Service, Inc., 13 S.W.3d 417, 420 (Tex.App.--Corpus Christi 1999, no pet.) (holding that placing a heavy bag on a table that caused it to break and re-injure plaintiff while he was being provided home health care was a breach of ordinary care and not a breach of an accepted standard of safety in the health care industry).  In Mills v. Angel, 995 S.W.2d 262 (Tex.App.--Texarkana 1999, no pet.), relied on by Romero, the court held that expert testimony is generally required when the underlying issue involves the performance of medical procedures because the nature of the alleged negligence is not within the common knowledge of laymen.  
Id
. at 268.  Similarly, because patient safety in a hospital involves many factors including, but not limited to, the physical or mental condition of the patient, limitations necessary because of prescribed treatment and medication, or physician’s orders, we hold that expert testimony was required.  
Moreover, even if the Hospital could be liable on its own negligence, expert testimony would be required to establish appropriate safety in the particular situation.  
See
 
Martinez
, 41 S.W.3d at 692.  We conclude that the trial court did not abuse its discretion in dismissing Romero’s claims.  Romero’s sole issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis

    Justice

Do not publish.

FOOTNOTES
1:
The trial court’s judgment erroneously reflects appellant as “Antonio” instead of “Antonia.”

2:
On June 18, 1997, Pacheco died, but not from injuries she sustained from her fall in the hospital.

3: Common experience teaches that the level of precautionary measures necessary for patient safety is subjective depending on the condition of the patient, the type of treatment, and the physician’s instructions for the patient, and thus falls within the Act. 
 
Art. 4590i, § 1.02.